UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TARANCE L. BRYANT,

        Petitioner,

v.

JON NOBLE,

        Respondent.

Case No. 21-CV-936-JPS

**ORDER**

**1. INTRODUCTION**

  On August 10, 2021, Petitioner Tarance L. Bryant ("Petitioner") filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. ECF No. 1. On July 19, 2022, this Court screened the petition under Rule 4 of the Rules Governing § 2254 cases and set a briefing schedule. ECF No. 5. On August 16, 2022, Respondent Jon Noble ("Respondent") filed an answer to the petition, ECF No. 8, and on September 30, 2022, Petitioner filed a "Response in Opposition [to] the Respondent's Answer," ECF No. 9, which the Court construes as Petitioner's brief. On November 28, 2022, Respondent filed a response brief. ECF No. 10. Petitioner did not file a reply brief. For the reasons set forth below, the Court finds that the petition is without merit and, therefore, will deny it. The action will accordingly be dismissed with prejudice.

**2. BACKGROUND**

  This § 2254 petition arises out of Petitioner's guilty pleas to and subsequent convictions of "Hit and Run-Involve Death" and "Homicide by

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TARANCE L. BRYANT,

        Petitioner,

v.

JON NOBLE,

        Respondent.

Case No. 21-CV-936-JPS

**ORDER**

**1. INTRODUCTION**

  On August 10, 2021, Petitioner Tarance L. Bryant ("Petitioner") filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. ECF No. 1. On July 19, 2022, this Court screened the petition under Rule 4 of the Rules Governing § 2254 cases and set a briefing schedule. ECF No. 5. On August 16, 2022, Respondent Jon Noble ("Respondent") filed an answer to the petition, ECF No. 8, and on September 30, 2022, Petitioner filed a "Response in Opposition [to] the Respondent's Answer," ECF No. 9, which the Court construes as Petitioner's brief. On November 28, 2022, Respondent filed a response brief. ECF No. 10. Petitioner did not file a reply brief. For the reasons set forth below, the Court finds that the petition is without merit and, therefore, will deny it. The action will accordingly be dismissed with prejudice.

**2. BACKGROUND**

  This § 2254 petition arises out of Petitioner's guilty pleas to and subsequent convictions of "Hit and Run-Involve Death" and "Homicide by

Intoxicated Use of Vehicle" in Racine County Case Number 2014CF001729.[1] ECF No. 1. Petitioner's convictions arise out of the following events. In the early morning hours of December 13, 2014, Petitioner drove his car at a high rate of speed and collided with another vehicle, killing its driver. *State v. Bryant*, No. 2019AP16-CR, 2020 WL 13348881, at *1 (Wis. Ct. App. Apr. 15, 2020). Petitioner ran from the scene and was apprehended by police, who obtained a search warrant for his blood. *Id.* Chemical testing revealed a blood alcohol concentration of .089 as well as THC and Lorazepam. *Id.*

After Petitioner pled guilty, a presentence investigation ("PSI") report was filed. *Id.* In his version of events as set forth in the PSI, Petitioner indicated that he was at a party and had gotten into an argument with another individual, Larry Ellison ("Ellison"), who shot at him. *Id.* He claimed that he was fleeing from Ellison's shots when he struck the victim's vehicle. *Id.*

At sentencing, the circuit court noted the lapse in time between the crash and the test of Petitioner's blood, stating,

> [b]ased on [his] refusal to submit to a chemical test of [his] blood, officers had to wake someone up in the morning to obtain a search warrant. That was done and several hours after the accident [he] still tested with a BAC of .089.

*Id.* The circuit court sentenced Petitioner to 13 years' confinement and nine years' extended supervision on each count, to operate to run concurrently, for a total term of confinement of 13 years and a total term of extended supervision of nine years. ECF No. 1 at 2.

---

[1] *State v. Bryant*, 2014CF001729, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2014CF001729&countyNo=51&index=0&mode=details (last visited May 30, 2023).

Petitioner filed a postconviction motion, arguing (1) "that the circuit court had improperly considered his refusal to consent to a warrantless blood draw as an aggravating factor at sentencing in violation of *Birchfield v. North Dakota*, [579 U.S. 438] (2016)"; and (2) "that sentence modification was appropriate in light of additional information that was not presented to the court that lent credence to his claim that he was fleeing from Ellison when he struck the victim's vehicle." *Bryant*, 2020 WL 13348881, at *1. Following a hearing, the circuit court denied the motion, "agree[ing] that punishing [Petitioner] at sentencing for his refusal to consent to a warrantless blood draw would have been improper; however, it disavowed doing so." *Id.* The circuit court also ruled that the additional information was not a new factor warranting a sentence modification. *Id.*; *see also* ECF No. 1-2.

Petitioner appealed. On April 15, 2020, the Wisconsin Court of Appeals affirmed the circuit court on both claims. *Bryant*, 2020 WL 13348881, at *2. As to the first claim, the Wisconsin Court of Appeals explained that "[a]lthough the court briefly referenced [Petitioner's] refusal to consent to a warrantless blood draw in its sentencing remarks, it did so in the context of explaining the delay in testing and the fact that [Petitioner's] blood alcohol concentration was still above the legal limit 'several hours after the accident.'" *Id.* The court continued, holding that "[n]othing in the court's remarks unequivocally state—or even suggest—that it imposed a harsher sentence as a direct result of [Petitioner's] refusal." *Id.* As to the second claim, the Wisconsin Court of Appeals was "not persuaded that [Petitioner] has demonstrated the existence of a new factor. The circuit court was well aware of [Petitioner's] claim that he was fleeing from Ellison when he struck the victim's vehicle. Indeed, it acknowledged

Page 3 of 16
Case 2:21-cv-00936-JPS   Filed 05/31/23   Page 3 of 16   Document 11

[Petitioner's] version of events in its sentencing remarks." *Id.* On August 20, 2020, the Wisconsin Supreme Court denied Petitioner's petition for review. *State v. Bryant*, 982 N.W.2d 636 (Wis. 2020).

In the instant § 2254 petition, Petitioner raises the same two grounds for relief (hereafter labeled "Ground One" and "Ground Two" in the same order listed above). ECF No. 1. In support of Ground One, Petitioner adds that, in its sentencing remarks, the circuit court "described [his] uncooperative behavior at the hospital where he was taken after the arrest" and "to[ok] [him] to task for refusing to consent to a blood draw." *Id.* at 6. Petitioner takes specific issue with the circuit court's comment, reproduced above, about officers needing to "wake someone up" to get a warrant. ECF No. 9 at 2 (quoting ECF No. 8-9 at 21). Petitioner also cites the circuit court's comments at the postconviction hearing:

> [T]he Court doesn't dispute the law on punishing somebody for re[fus]ing a blood draw; it is a right, and that was not at all the Court's intention in making the comment that it did. And actually as I was re-reading the transcript, I thought to myself, had this sentence been anywhere else in the transcript, it wouldn't even be an issue.

*Id.* (quoting ECF No. 8-10 at 10). According to Petitioner, "this insufficient attempt at rectification does not negate the explicit attention that was inappropriately given to the Petitioner's reliance o[n] his constitutional right to decline to voluntarily have his blood drawn." *Id.* at 5.

3. **STANDARD OF REVIEW ON HABEAS**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his

constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith,* 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could

Page 5 of 16
Case 2:21-cv-00936-JPS    Filed 05/31/23    Page 5 of 16    Document 11

disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1);

*Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008). A federal court also reviews a claim *de novo* where the state courts failed to "reach the merits" of the federal constitutional claim entirely. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings' . . . . Instead, the claim is reviewed *de novo*.").

4.    LAW & ANALYSIS

    4.1    Ground One

In *Birchfield*, the U.S. Supreme Court held that it is unconstitutional for a state to "impose criminal penalties on the refusal to submit to" a warrantless "intrusive blood test." 579 U.S. at 477. "There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* At his postconviction hearing and in his § 2254 brief, Petitioner relies on *Birchfield* and *State v. Dalton*, 914 N.W.2d 120 (Wis. 2018). ECF No. 8-10 at 6–7; ECF No. 9 at 5. In

*Dalton*, the Wisconsin Supreme Court held that the following statement by the circuit court violated *Birchfield*:

> The other thing you did is anybody who drives a motor vehicle in Wisconsin impliedly consents to a blood or breath draw after they're arrested. And you were arrested, and you disregarded that, and you will be punished for that today. You don't have the right not to consent. And that's going to result in a higher sentence for you.

*Dalton*, 914 N.W.2d, ¶ 21; *id.*, ¶¶ 60–61 ("[The circuit court] was thus definitive in its intent to give Dalton a longer sentence for the sole reason that he refused to submit a blood test. This is a violation of *Birchfield*.") (citing *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) ("[A] State may not impose a penalty upon those who exercise a right guaranteed by the Constitution.")). Petitioner argues that, like in *Dalton*, the state courts decisions' here are contrary to or an unreasonable application of *Birchfield*. ECF No. 9 at 3.

In response, Respondent argues that Petitioner's burden is *not* to show "that the state court's decision was 'merely wrong' or 'even clear error.'" ECF No. 10 at 11 (quoting *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020)). Rather, he "must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Shinn*, 141 S. Ct. at 523). According to Respondent, "[Petitioner] has not met that burden." *Id.* The Court agrees.

The circuit court's comments at sentencing consumed approximately half the hearing. ECF No. 8-9 at 17–33. The court began by noting that the PSI included a sentencing range of between eight to 15 years of confinement for each count. *Id.* at 18. The court then recounted the crash, including Petitioner's version of events regarding an attempt to flee from Ellison. *Id.* at 19. The court particularly focused on its sadness upon learning

earlier in the sentencing hearing from Petitioner "that it took this incident to finally realize that [Petitioner] ha[s] a problem." *Id.* at 18. The court discussed Petitioner's appearance, behavior, and comments to the police when he was located after the incident. *Id.* at 20. Petitioner's appearance included signs of obvious injury; his mouth was bloody, he had abrasions on his forearms and hands, and shards of glass in his hair. *Id.* Because he was injured, he was taken to the hospital, where he resisted examination and required restraints. *Id.* The court then made the comment at issue here, noting that because Petitioner refused a blood test, it took several hours to test the blood because someone needed to be woken up to get a warrant, and then, "several hours after the accident [he] still tested with a BAC of .089."[2] *Id.* at 21.

Next, the court described Petitioner's criminal history, as set forth in the PSI. The court observed that Petitioner's criminal history was "lengthy" and began when he was 12 years old. *Id.* at 22. Because he was a juvenile, he received "significant services" to assist with rehabilitation. *Id.* Petitioner had the "Cadillac of services," with placement at two boys' homes. *Id.* However, thereafter, Petitioner was in and out of prison as an adult, beginning in 1997. *Id.* at 23 ("So the pattern is established. You get the counseling, you get help[,] and you decide you're not going to take it."). The court also commented extensively on Petitioner's family history, *id.* at 24–26, and education and employment histories, *id.* at 26. The court examined Petitioner's emotional and physical health histories as well,

---

[2] "It is illegal in Wisconsin for a driver over the age of 21 to operate a motor vehicle [w]ith a Blood/Breath Alcohol Concentration (BAC) of 0.08 or greater." Drunk Driving Law, Wisconsin Department of Transportation, *available at* https://wisconsindot.gov/Pages/safety/education/drunk-drv/ddlaw.aspx (last visited May 30, 2023).

which included his alcohol and drug abuse treatments. *Id.* at 26–28. At the conclusion and just prior to announcing Petitioner's sentence, the court stated

> There are a number of factors, sir, that I'm required to consider when I sentence an individual. Punishment; that goes without saying. Rehabilitation, deterrence, protection of the community, all of those factors come into play in sentencing you today.
>
> This is a different situation than someone who comes in for the first time without the history you present.
>
> The fact that you were 33 years old when this crime was committed; you're 35 today, the fact that you have chosen, chosen the revolving door, offered the Cadillac of services from age 12 and up and didn't take advantage of them, the fact that it took this fatality by your own admission today to finally drive it home that you got an issue is very sad.
>
> Taking into consideration all these factors, the factors that I need to consider today, the significant criminal history that you present with, I'm sentencing you . . . . [announces sentence of total confinement of 13 years and total supervision of nine years].

*Id.* at 28–29.

In *United States v. Allen*, 596 F.2d 227, 231 (7th Cir. 1979), the Seventh Circuit considered an argument that "comments made by the district court judge at the sentencing hearing indicated an impermissible intent on the part of the judge to penalize the defendant for the assertion of his Fifth and Sixth Amendment rights." After considering the record, the Seventh Circuit held that "a fair overall consideration of the remarks clearly discounts any such improper sentencing motive on the part of the judge." *Id.* "The trial judge made it clear that for sentencing purposes he was considering only the character of the defendant and the circumstances of the crime," and "[t]he sentence was well below the statutory maximum [and] was not harsh

. . . ." *Id.*; *see also U. S. ex rel. Gardner v. Meyer*, 519 F. Supp. 75, 81 (N.D. Ill. 1981) (requiring record materials to analyze context of comments made at sentencing).

More recently, this District considered a vindictive sentencing claim based on the sentencing judge's comment that the petitioner went from "being cooperative to being completely uncooperative and they had to get a warrant" due to his refusal to submit to a blood draw. *Gravelle v. Champagne*, No. 19-CV-1712-PP, 2020 WL 6136128, at *2 (E.D. Wis. Oct. 19, 2020). Although the case was only at screening, and did not make it to merits briefing, the court explained that the analysis required consideration of the sentencing transcript to ascertain whether it shows "any actual vindictiveness on the part of the sentencing judge." *Id.* at *4 (collecting cases).

In another case, this District considered a § 2254 claim related to the trial court's statement at sentencing that the victims were forced to be re-victimized by testifying at trial. *Anthony v. Meisner*, No. 17-CV-231, 2018 WL 6527379, at *3 (E.D. Wis. Dec. 12, 2018). The petitioner argued that he received a harsher sentence because he availed himself of his constitutional right to trial by jury. *Id.* at *3. The court reviewed the entirety of the sentencing transcript and held that the Wisconsin Court of Appeals' conclusion was not contrary to or an unreasonable application of federal law where the challenged comment was a single reference contained within more far-ranging comments, and "part of a larger observation regarding how Anthony victimized the girls." *Id.* at *3, *4 ("[T]he court of appeals' conclusion that this single statement, contained within a thorough sentencing decision, did not show Anthony was punished for exercising his Sixth Amendment rights, was not unreasonable.").

So too is the Court's conclusion in this case. Petitioner's refusal to consent to a blood draw was mentioned only in the context of the blood test's results; i.e., that Petitioner was still above the legal limit even "several hours" after the accident. The circuit court was focused on Petitioner's criminal history and failure to learn his lesson until life was lost. The aggravating factor was the level of intoxication, not the refusal. This is not a case like *Dalton* where the sentence was clearly tied to the refusal to consent to the blood draw such that the court was "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 141 S. Ct. at 523. Indeed, in pronouncing the factors bearing on its decision to impose the sentence it did—which was still lower than the range contemplated by the PSI—the circuit court did not reiterate even the delay and level of intoxication. As in *Allen* and *Anthony*, overall consideration of the circuit court's remarks does not show that a higher sentence was imposed because Petitioner did not consent to a blood draw. Simply put, the Wisconsin Court of Appeals' decision on this issue was not contrary to *Birchfield* and was a reasonable application of federal law. Therefore, Ground One must be denied.

### 4.2 Ground Two

As an initial matter, the Court agrees with Respondent that Petitioner appears to have "abandoned" Ground Two. ECF No. 10 at 12. While Ground Two was raised in the petition, Petitioner does not mention it at all in his brief. ECF No. 9; *see also Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) ("Pole did not argue, in either his *habeas* petition or his brief in the district court, the issue of his lawyer's failure to present the gunshot residue test, and therefore forfeited it . . . ."). However, in the interest of thoroughness, the Court will review Ground Two.

Petitioner does not explain *what* additional new information concerning his fight with Ellison constituted a new sentencing factor. ECF No. 1. The Court gleans from the record that this new information involved: (1) the fact that Petitioner "raised this issue of Larry Ellison in his interview with the police a couple days after the accident"; (2) the location of the accident impacted "whether there was any opportunity for someone to have been following [Petitioner] who might not have been spotted" by a witness; and (3) the fact that "Larry Ellison [is] precisely the kind of guy who went to parties and got in arguments with people and started firing shots at them, including out of a car into another moving car . . . ." ECF No. 8-10 at 8–9. The circuit court held that this information did not "rise[] to the level of a new factor as required by the law" and reiterated that its sentencing decision was based on the fact that "[Petitioner] made a God awful decision that night to get in his car intoxicated and ultimately resulting in this hit and run accident and the death of an innocent person." *Id.* at 11.

Respondent argues that this claim is one of state law error that does not provide a basis for federal habeas relief. Under Wisconsin law, a circuit court may modify a sentence based upon "the defendant's showing of a new factor." *Bryant*, 2020 WL 13348881, at *2 (citing *State v. Harbor*, 797 N.W.2d 828, ¶ 35 (Wis. 2011)). Respondent is correct that federal courts reviewing § 2254 petitions raising this claim have held that it is a state law issue for which there is no "Supreme Court precedent, or federal constitutional provision" and accordingly raises "no federal constitutional challenge for th[e] Court to review." *McDowell v. Pollard*, No. 17-CV-1267, 2019 WL 4644003, at *4 (E.D. Wis. Sept. 24, 2019). The Court agrees that

Petitioner's claim is a state law issue for which there is no reviewable federal constitutional challenge.

However, even if the claim could be interpreted to implicate a federal issue, the claim is still without merit. For example, at least one court analyzed a "new factor" warranting a sentence modification claim as mounting a federal constitutional challenge *See Prude v. Pollard*, No. 11-CV-1005, 2012 WL 3301029, at *4 (E.D. Wis. Aug. 13, 2012) (citing *United States v. Tucker*, 404 U.S. 443, 446–47 (1972) (holding that a sentence based on "misinformation of constitutional magnitude," such as a sentence based on "assumptions concerning [the defendant's] criminal record which were materially untrue," is a constitutional barrier to a judge's otherwise "wide discretion" in determining what sentence to impose)). In *Prude*, the court held that the Wisconsin Court of Appeals' decision was not unreasonable where it concluded that a "new factor"—that an individual other than the defendant ostensibly made threatening phone calls—was subject to the circuit court's assessment of the witnesses' credibility:

> In discounting [witness's] testimony that he made the calls without [defendant's] knowledge, the judge considered the fact that [witness] had ten convictions and his testimony regarding what he said to the victim was inconsistent with the victim's statement . . . . The judge further considered the fact [second witness] testified that he did not make the calls and the fact [defendant] was the only defendant still awaiting adjudication . . . . These are all appropriate considerations for a fact-finder. Under these circumstance[s], this Court cannot say that the court of appeals acted unreasonably in affirming the circuit court's factual and credibility findings.

*Id.* at *6 (internal citations omitted).

In this case, first, the alleged new factor here is not "misinformation of a constitutional magnitude." *Tucker*, 404 U.S. at 447. At the

postconviction hearing, Petitioner conceded that "certainly there is no suggestion that the facts . . . would be in any way a defense to the charge." ECF No. 8-10 at 7. Second, as with the refusal to consent to a blood draw, while the circuit court considered Petitioner's contentions regarding Ellison, those considerations were brief and solitary, and the circuit court did not restate them as factors affecting the sentence. The circuit court plainly rested its determination on Petitioner's "decision . . . to get in his car intoxicated . . . ." *Brown*, 2020 WL 13348881, at *2. Therefore, Ground Two must also be denied either because it presents a state law challenge that is not reviewable in federal habeas or, to the extent it mounts a federal challenge, that challenge is meritless. *See Cone*, 556 U.S. at 472. As a result, the action will be dismissed with prejudice.

5.  **CONCLUSION**

As discussed above, Petitioner's grounds for relief are without merit. The Court must therefore deny his petition.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). No reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Page 15 of 16
Case 2:21-cv-00936-JPS   Filed 05/31/23   Page 15 of 16   Document 11

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Page 16 of 16
Case 2:21-cv-00936-JPS   Filed 05/31/23   Page 16 of 16   Document 11